UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| SAVANNAH LEANNA KOLSTEDT, | ) |
| Plaintiff, | ) |
| v. | ) NO. 2:25-cv-00033 |
| TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. PROCEDURAL HISTORY

Savannah Kolstedt, a resident of Cookeville, Tennessee, filed this action in the Eastern District of Tennessee on March 19, 2025, seeking the writ of habeas corpus on behalf of her minor children who she claimed were wrongfully removed from her custody by the Tennessee Department of Children's Services (DCS). (Doc. No. 1). She also filed a Motion for Emergency Relief (Doc. No. 2) seeking immediate restoration of her parental rights. After receiving notice of a filing-fee deficiency, she filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 5).

On April 9, 2025, Ms. Kolstedt filed a second Motion for Emergency Relief (Doc. No. 7), asking the court (1) to intervene "to prevent any unjust or unlawful rulings at the upcoming adjudication hearing scheduled for April 8th, 2025" (id. at 5), and (2) to vindicate her Fourteenth Amendment rights to due process and equal protection by reviewing the custody determinations of the state trial and appellate courts, removing the minor children from their father's custody, and restoring them to Ms. Kolstedt's custody. (Id. at 21–23).

On April 28, 2025, in response to an order to show cause why venue should not be transferred to this District, Ms. Kolstedt conceded that the Middle District of Tennessee was the proper venue for this action (Doc. No. 9) and amended her original pleading, supplanting her habeas corpus petition with a "Complaint for Declaratory and Injunctive Relief and Damages" under 42 U.S.C. § 1983. (Doc. No. 10, "Amended Complaint"). On April 30, the Eastern District transferred the case to this District. (Doc. No. 11).

One month later, on May 28, 2025, Plaintiff Kolstedt filed an "Emergency Motion to Stay All State Court and DCS Actions Pending Federal Review" (Doc. No. 21), asking this Court to "enter an emergency stay on all current and future [DCS] interventions, court-ordered services, case plan alterations, and hearings related to this matter, pending the outcome of the federal case currently under review." (Id. at 1). Between May 29 and June 2, Plaintiff filed a flurry of other motions related to her desire to litigate her child custody case in this Court, including motions to strike or invalidate a psychological assessment of her that was published on May 20, 2025 (Doc. Nos. 18 and 19); a motion for the Court to take judicial notice that she is being compelled to submit to supervised visitation with her children, in the presence of their father (Doc. No. 20); a motion for appointment of counsel (Doc. No. 22); and a motion to terminate the parental rights of her adversaries in the custody litigation. (Doc. No. 23).

The matter is now before the Court for decision on Plaintiff's IFP application and initial review of the Amended Complaint pursuant to the pauper statute, 28 U.S.C. § 1915(e)(2).

## II. PAUPER STATUS

Plaintiff's IFP application lists a monthly household[1] income which, combined with the household's monthly expenses and Plaintiff's responsibility for care of four dependents aged 6 and

---

[1] After the IFP application was filed, Plaintiff and her husband apparently decided to end their marriage. (See Doc. No. 15).

under, sufficiently demonstrates that she cannot afford to pay the full $405 civil filing fee[2] in advance "without undue hardship." Foster v. Cuyahoga Dep't of Health and Human Servs., 21 F. App'x 239, 240 (6th Cir. 2001); see also, e.g., Shannon v. Omni Logistics LLC, No. EP-23-CV-384-KC, 2023 WL 8113826, at *1 (W.D. Tex. Nov. 22, 2023) (stating that "IFP status does not require absolute destitution," but should be based on consideration of "whether the movant can afford the costs of proceeding without undue hardship or deprivation of the necessities of life") (citation omitted). Accordingly, the IFP application (Doc. No. 5) is **GRANTED**. 28 U.S.C. § 1915(a).

### III. INITIAL REVIEW

A. Legal Standard

The Court must conduct an initial review and dismiss the Amended Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see also Ongori v. Hawkins, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Amended Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," Small v. Brock, 963 F.3d 539, 540 (6th Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," Nat'l Rifle Ass'n of Am. v. Vullo,

---

[2] A party instituting a civil action in federal court must pay a civil filing fee of $350 plus "such additional fees . . . as are prescribed by the Judicial Conference of the United States." 28 U.S.C. § 1914(a), (b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023). The Judicial Conference has set a $55 administrative fee for filing any civil case, see id., bringing the total filing fee to $405.

602 U.S. 175, 181 (2024) (quoting Iqbal, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. Inner City, supra.

B. Signature Defect

As a preliminary matter, the Court notes that neither the Amended Complaint nor any of Plaintiff's subsequent filings are signed in her own hand. Rather, these filings contain either a digital signature—as in the case of the Amended Complaint, which applies that signature to both the body of the pleading and to its verification under penalty of perjury (see Doc. No. 10 at 3, 4) —or simply Plaintiff's typewritten name. (See, e.g., Doc. No. 21 at 3). A declaration under penalty of perjury of the truth of a written filing must bear the declarant's "personal signature" rather than her "electronic signature." Blount v. Stanley Eng'g Fastening, 55 F.4th 504, 515 (6th Cir. 2022). Furthermore, Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, or other paper" be signed by hand, and further requires the Court to strike an unsigned filing if the failure to sign is not "promptly corrected." Fed. R. Civ. P. 11(a); see Becker v. Montgomery, 532 U.S. 757, 763–64 (2001) (declining "to permit typed names" to satisfy Rule 11 signature requirement). Even pro se parties who are able to file electronically must provide a scanned image of their original signature, rather than a signature in typeface. See Administrative Order No. 167-1, ¶ 7.3 (rev. Nov. 6, 2024).

C. Analysis of Allegations and Claims

Even if the signature defect were cured, this case would still be subject to dismissal. The Amended Complaint asserts three claims. The first is a claim that DCS violated Plaintiff's

4

Fourteenth Amendment right to due process "by removing her children without adequate justification and by failing to provide a fair and impartial investigation." (Doc. No. 10 at 2). The second claim asserts a violation of Plaintiff's Fourteenth Amendment right to equal protection of the laws, based on DCS's alleged "discriminat[ion] against Plaintiff by treating her differently from other similarly situated individuals without a legitimate governmental interest[.]" (Id. at 3). Plaintiff's third claim is that DCS conspired to interfere with her civil rights in violation of 42 U.S.C. § 1985, "by coordinating actions that led to the unjust removal of her children and suppression of exculpatory evidence." (Id.).

The facts in support of Plaintiff's claims, as they are presented in the Amended Complaint, are as follows:

> Plaintiff's children were removed from her custody and placed into foster care by DCS, despite the availability of safer and more suitable family placements. DCS exhibited bias by favoring placement with Plaintiff's adoptive parents, who have a documented history of abuse and neglect, and whose home conditions are unsafe for children. DCS disregarded credible evidence of abuse by Victoria Walker, including witness statements and audio recordings, and failed to investigate her actions adequately. DCS instructed Plaintiff's ex-husband to disable home security cameras, effectively suppressing evidence of abuse and neglect. DCS demonstrated inconsistent standards by dismissing statements from Plaintiff's children due to their age, while accepting similar statements from other minors when it suited their narrative. Plaintiff believes that DCS's actions are retaliatory and discriminatory, violating her constitutional rights and jeopardizing the welfare of her children.

(Doc. No. 10 at 2). Plaintiff also provided a copy of a "Protective Custody Order – Bench Order" issued by the Putnam County Juvenile Court on March 13, 2025, in the matter of State of Tennessee Department of Children's Services v. Savannah Leanna Kolstedt, Mother, et al., No. 24-DN-132. (Doc. No. 2 at 77–83). That order removed Plaintiff's minor children from her custody and placed them in the custody of Christopher Kolstedt, father to three of the four children. (Id.).

Plaintiff seeks relief in the form of a declaration that DCS violated her rights, an injunction requiring DCS "to cease discriminatory practices and to conduct a fair reassessment of the custody placement," and an award of compensatory and punitive damages. (Id.).

        1. <u>Sovereign Immunity</u>

It is well established that DCS, as an agency of the State of Tennessee, enjoys the State's sovereign immunity from suit in federal court under the Eleventh Amendment. <u>Hoffman v. Tennessee Dep't of Child. Servs.</u>, No. 3:20-CV-00900, 2020 WL 6946606, at *2 (M.D. Tenn. Nov. 24, 2020) (citing, <u>e.g.</u>, <u>Ernst v. Rising</u>, 427 F.3d 351, 358 (6th Cir. 2005) (en banc), and <u>Heithcock v. Tenn. Dep't of Children's Servs.</u>, No. 3:14-CV-2377, 2015 WL 4879107, at *5–6 (M.D. Tenn. Aug. 14, 2015)). "This immunity bars suits 'for injunctive, declaratory or monetary relief.'" <u>Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee</u>, 63 F.4th 510, 515 (6th Cir. 2023) (quoting <u>Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.</u>, 987 F.2d 376, 381 (6th Cir. 1993)). The only exceptions to this immunity are "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in <u>Ex Parte Young</u>, 209 U.S. 123 (1908), applies." <u>Boler v. Earley</u>, 865 F.3d 391, 410 (6th Cir. 2017).

Section 1983 does not abrogate Eleventh Amendment immunity, nor has Tennessee consented to be sued under that statute. <u>Morgan</u>, 63 F.4th at 518. While the doctrine established in <u>Ex Parte Young</u> would allow a suit for prospective injunctive relief for a continuing violation of federal law against a DCS official in his or her official capacity, 209 U.S. at 159–60, no such relief is sought in the Amended Complaint, which only names the agency as Defendant and does not attribute misconduct to any agency official. Even if Plaintiff could by further amendment name a DCS official in his or her official capacity as Defendant in place of DCS, the Court would decline

6

to exercise jurisdiction as a matter of federal-state comity. This is because, "to the extent [she] seeks a declaration that the state's child-custody determination was unlawful, an injunction for the minor children's release, and monetary damages arising from the child-custody decision, these claims 'constitute collateral attacks on the state court judgments terminating [her] parental rights and [are] properly excluded from consideration by the [district] court[ ].'" Sefa v. Kentucky, 510 F. App'x 435, 437–38 (6th Cir. 2013) (quoting Stephens v. Hayes, 374 F. App'x 620, 623 (6th Cir. 2010)).

In Stephens, another Section 1983 suit which, like Sefa, involved the allegedly unconstitutional termination of parental rights, the Sixth Circuit stated as follows:

> Under the principles of comity and deference to state expertise in the field of domestic relations, it has been our consistent policy to refuse to exercise jurisdiction over claims which seek to collaterally attack a state court judgment terminating parental rights. *See Castorr v. Brundage*, 674 F.2d 531, 535–36 (6th Cir. 1982). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). Consequently, we decline to exercise jurisdiction over Plaintiffs' claims in which the tort action is a mere pretense and the suit is actually concerned with child custody issues. *See Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988).

374 F. App'x at 623. Sixth Circuit precedent thus establishes that constitutional tort actions which amount to collateral attacks on state court domestic relations decisions (as this case clearly does) should not be entertained, even if they are brought against a defendant who is not otherwise immune from suit.

In sum, because Eleventh Amendment sovereign immunity bars Plaintiff's suit against DCS, the Court must dismiss the suit without prejudice for lack of jurisdiction. See Carmichael v. City of Cleveland, 571 F. App'x 426, 435 (6th Cir. 2014) (citing Ernst, 427 F.3d at 367) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice."). Because the Amended Complaint is attempting to win relief, in various

forms, from harms resulting from an allegedly biased and otherwise wrongful investigation and state-court determination regarding custody of Plaintiff's minor children, the case will be dismissed without allowing Plaintiff an opportunity to further amend.

2. Abstention

Lastly, even if Plaintiff could establish this Court's jurisdiction to enjoin a DCS official's misconduct or otherwise to entertain her claims for non-monetary relief, the Court would have to abstain from intervening in any ongoing proceedings in the Putnam County Juvenile Court. That court's March 13, 2025 custody order (Doc. No. 2 at 77–83) set a further review hearing in April and also contemplated "further child support proceedings." (See id. at 80–81). On May 28, Plaintiff asked this Court to "stay all state court . . . actions pending federal review (Doc. No. 21 at 1), and on May 29, she offered an "overview of the case" based on "seven plus years and counting" of DCS involvement with her family. (Doc. No. 17 at 3). It is thus reasonable to infer that the Putnam County Juvenile Court proceedings are ongoing.

Where state proceedings related to custody, termination of parental rights, and support obligations are ongoing, the abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971), "prevents the district court from ruling [on related requests for relief] because the proceeding implicates important state interests and [Plaintiff] has an adequate opportunity to raise [her] challenges" in state court. Bodell v. McDonald, 4 F. App'x 276, 279 (6th Cir. 2001) (cited in Sefa, 510 F. App'x at 437–38; citing O'Shea v. Littleton, 414 U.S. 488, 499–504 (1974)); see also Evans v. Hepworth, 433 F. Supp. 3d 1171, 1180 (D. Idaho 2020) ("[T]here is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law.") (quoting DuBroff v. DuBroff, 833 F.2d 557, 561 (5th Cir. 1987), and citing other circuit-court cases). Accordingly, this Court cannot grant Plaintiff the relief she seeks.

8

## IV. CONCLUSION

For the above reasons, this action is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim within this Court's subject-matter jurisdiction, or upon which it could otherwise grant relief while state proceedings are ongoing. Plaintiff's pending motions (Doc. Nos. 2, 7, 19–23) are **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE